IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| LARRY DARRELL DOUGLAS, SR., *et al.*, | |
| Plaintiffs, | |
| v. | 2:24-CV-030-Z-BR |
| POTTER COUNTY, TEXAS, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion to Exclude Certain Opinions of Defendant's Expert Shane J. Poole (ECF No. 73) and Motion to Exclude Certain Opinions of Defendant's Expert Nicholas P. Longnecker, M.D. (ECF No. 75) (each, a "Motion" and together, the "Motions"). Plaintiffs state that "several opinions of [Mr. Poole and Dr. Longnecker] do not meet the requirements of the Federal Rules of Evidence" and seek to have those opinions — fifty-six opinions total — excluded from use as testimony or in any motions in the instant case. ECF Nos. 73 at 1–2, 75 at 1–2. Plaintiffs' Motion regarding Mr. Poole's opinions (ECF No. 73) is **GRANTED in part** and **DENIED in part**. Plaintiffs' Motion regarding Dr. Longnecker's opinions (ECF No. 75) is **DENIED**.

BACKGROUND

Plaintiffs sued Potter County under 42 U.S.C. Section 1983, alleging that the County's "policies, practices, and/or customs" resulted in the death of detainee Larry Darrell Douglas, Jr. ECF No. 1 at 4. Defendant designated two experts — Mr. Shane J. Poole and Dr. Nicholas P. Longnecker — on October 21, 2024, pursuant to Federal Rule of Civil Procedure 26(a)(2). ECF No. 63. Mr. Pool is a retired Major with the Travis County Sheriff's Office Administration

1

and Support Bureau who served thirty-one years in the corrections division; Dr. Longnecker is a board-certified family practice physician who currently serves as the Chief Medical Officer of a correctional healthcare company. *Id.* at 1–3.

Plaintiffs have asserted that both expert witnesses are unqualified, and that their opinions are unreliable and irrelevant. *See generally* ECF Nos. 73, 75. Defendant disagrees and further notes that Plaintiffs' Motions were filed prior to taking Mr. Poole's and Dr. Longnecker's depositions — where "many of the issues raised by the Plaintiffs . . . can be addressed by this Court at trial." ECF Nos. 80 at 2, 81 at 7.

### LEGAL STANDARD

Federal Rule of Evidence 702 provides that expert testimony is admissible to assist the trier of fact in understanding evidence or determining a fact at issue. FED. R. EVID. 702. But expert witnesses must satisfy certain criteria; in short, an expert witness must be qualified and provide relevant and reliable testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993).

"The issues of qualification, relevancy, and reliability are necessarily separate and yet intertwined." *Curlee v. United Parcel Serv., Inc.*, No. 3:13-CV-344, 2014 WL 11516719, at *1 (N.D. Tex. Dec. 12, 2014). First, an expert witness must be qualified by "knowledge, skill, expertise, training, or education." FED. R. EVID. 702. If qualified, an expert may then testify as an opinion or otherwise, if it is demonstrated that it is more likely than not that (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," that (2) "the testimony is based on sufficient facts or data," that (3) "the testimony is the product of reliable principles and method," and that (4) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the

case." *Id.*; *Daubert*, 509 U.S. at 589, 592–93; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51 (1999) (holding that *Daubert* principles apply to all types of experts).

Courts then turn to reliability, determined by assessing "whether the reasoning of methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). Courts can evaluate reliability through a non-exclusive list of factors that assist in determining whether an expert's theory or technique "(1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Daubert*, 509 U.S. at 591–93. But this list is by no means an inflexible or "definitive checklist;" the *Daubert* factors are not relevant in every case, and other indicia of reliability such as "professional experience, education, training, and observations" can be considered. *Id.* at 593; *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006); *Kumho Tire Co.*, 526 U.S. at 150. The proponent carries the burden to "prove by a preponderance of the evidence that the testimony is reliable." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). But if "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Finally, relevance is considered. Relevant evidence has "any tendency to make a fact more or less probable than it would be without the evidence" and involves facts "of consequence in determining the action." FED. R. EVID. 401; *see also Daubert*, 509 U.S. at 587 (noting that the standard for relevance "is a liberal one").

When considering evidence, the trial court should act as a "gatekeeper" to ensure that any evidence admitted is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. This

3

"gatekeeping" obligation applies equally to testimony based on scientific, technical, or other specialized knowledge. *Kumho Tire Co.*, 526 U.S. at 141. The court, therefore, has significant discretion in deciding whether to exclude an expert's testimony — the rejection of expert testimony is the exception and not the rule, as the "gatekeeper" is not intended to serve as a replacement for the adversary system. *Patton v. Metro. Lloyds Ins. Co. of Tex.*, No. 5:21-CV-074, 2022 WL 2898946, at *3 (N.D. Tex. Feb. 14, 2022); *Sims v. City of Jasper, Tex.*, No. 1:20-CV-124, 2023 WL 8257969, at *2 (E.D. Tex. Jan. 20, 2023). "[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996).

ANALYSIS

**I. Some of Mr. Poole's opinions should be excluded.**

Plaintiffs assert that Mr. Poole lacks qualifications as an expert and offers unreliable and irrelevant opinions, and on such bases, asks the Court to exclude numerous opinions of Mr. Poole.[1] ECF No. 73. The Court considers each of these three allegations in turn.

*A. Mr. Poole is properly qualified as an expert.*

The Court begins its analysis with Poole's qualifications. Mr. Poole has a Master's Degree in Organizational Leadership and Ethics and is a graduate of both the National Jail Leadership Command Academy and the FBI National Academy. ECF No. 63 at 2. Mr. Poole has thirty-one years of experience with the Travis County Sheriff's Office Administration and Support Bureau, where he served in supervisory positions "focused on inmate supervision, inmate medical and

---

[1] Plaintiffs seek to exclude a total of 19 statements made by Mr. Poole. Due to the numerosity of these statements, the Court refrains from including each statement at issue in the instant Order; all statements are located in Plaintiffs' Motion. ECF No. 73.

4

mental health services, staffing training, and leadership." ECF Nos. 63 at 1–2, 80 at 2. Further, Mr. Pool has provided consulting services in areas such as "training, classification, security, maintenance, life-safety operations, use of force, medical care, supervision of staff, inmate rights, inmate mental health issues, operations management efficiencies, employee discipline, criminal justice system trends, criminal justice system case flow analysis, and jail population growth management." ECF No. 63 at 2. In addition, Mr. Poole taught courses at Texas State University focusing on "mid-level management in criminal justice, advanced criminal justice management, forensic evidence, and legal issues in corrections and penology." *Id.*

Mr. Poole's extensive knowledge, skill, experience, training, and education in the corrections context applies squarely to the issues Plaintiffs address — such as jail policies and practices of Potter County — and would certainly help an unfamiliar trier of fact understand the nuances of the instant case. To be sure, other Texas district courts have found similarly situated professionals to be qualified as expert witnesses. *See, e.g., Bonnet-Pritchett v. Wash. Cnty.*, No. A-21-CV-149, 2022 WL 3082522, at *2 (W.D. Tex. June 16, 2022) (finding in a jail-suicide case that a twenty-year corrections officer with the Federal Bureau of Prisons was "clearly qualified to offer an expert opinion on corrections matters"); *Ali v. Stephens*, No. 9:09-CV-052, 2014 WL 12771445, at *2–3 (E.D. Tex. July 11, 2014) (finding that witnesses with twenty years and fifty-nine years of experience in corrections were both qualified to offer expert opinions). Accordingly, the Court finds that Mr. Poole is properly qualified as an expert witness.

> **B. *Most of Mr. Poole's opinions are sufficiently reliable and relevant to the instant case.***

Plaintiffs argue that Mr. Pool "repeatedly offers baseless legal conclusions about which he cannot testify and attempts to tell the jury what to conclude as to elements of claims and defenses." ECF No. 73 at 5. Plaintiffs also assert that Mr. Poole did not identify any "principles

5

or methods" in presenting his conclusions. *Id.* However, Mr. Poole's testimony as a non-scientific expert — based on his experience in the law enforcement and corrections context — is "not the type of testimony that lends itself to requiring an objective basis." *See Basler v. Lance Barron*, No. CV H-15-2254, 2017 WL 635501, at *3 (S.D. Tex. Feb. 16, 2017). Rather, a thorough review of the facts of the case and application of education, experience, and training provides a sufficient methodology. *Id.* at 3–4.

Mr. Poole's report indicates that he based his opinions on his "understanding of the facts and circumstances concerning the actions of the Defendant, evidenced by the materials [he] examined and [his] personal training and experience, particularly in law enforcement and corrections training, in the events of which the Plaintiffs complain." ECF No. 74 at 28. Relying on his experience, education, and review of the facts of the instant case, Mr. Poole properly provided multiple reliable and relevant expert opinions regarding whether Potter County "adopted policies relevant to inmate medical care, provided for adequate inmate medical health care, complied with state standards and inmate monitoring, and whether or not jailers were adequately trained." ECF No. 80 at 9.

However, Mr. Poole *cannot* testify as to whether Defendant was deliberately indifferent or violated the Constitution — these are legal conclusions that Mr. Poole, as an expert witness, is not permitted to offer. *Gregory v. Baucum*, No. 7:16-CV-103, 2018 WL 684893, at *4 (N.D. Tex. Feb. 2, 2018) (holding that expert testimony concluding that defendants did not demonstrate deliberate indifference is impermissible); *Harper v. City of Dall.*, No. 3:14-CV-2647, 2017 WL 6033799, at *14–15 (N.D. Tex. Dec. 6, 2017) (determining that "any testimony by [the expert witness] of an opinion as to whether any defendant . . . was deliberate [sic] indifferent is excluded"); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("[A]llowing an

6

expert to give his opinion on the legal conclusions to be drawn from the evidence . . . invades the court's province."). Accordingly, the following opinions of Mr. Poole must be excluded:

- "There is also no information or evidence that any policymaker for Potter County knew of any pattern of conduct, negligence or shortcoming or inadequacy in the training of the jail officers to not properly respond to inmate requests for medical care nor that Jail staff had shown any *deliberate indifference* towards inmates' medical needs including Douglas Jr."

- "There is no information or evidence in the record that I have analyzed to indicate Potter County knew that their policies posed a substantial risk to Douglas Jr.; much less chose to ignore the risk by being *deliberately indifferent* to Douglas Jr. medical needs."

- "There is no information or evidence that indicates any policymaker of Potter County acted with *deliberate indifference* regarding any training or supervision of the jail officers or medical officers."

- "There was nothing so obvious in the previous actions of employees to suggest that a policymaker of Potter County acted with *deliberate indifference*, had notice of an inadequate policy, and/or chose not to address it."

- "There is no information or evidence in the record I have analyzed indicating Potter County *violated the 14th Amendment or 8th Amendment* to the United States Constitution."

ECF No. 74 at 30–33 (emphases added). All other opinions stated by Mr. Poole are permissible and should not be excluded. Accordingly, Plaintiffs' Motion as to the opinions of Mr. Poole (ECF No. 73) is **GRANTED in part** and **DENIED in part**.

7

## II. Dr. Longnecker's opinions should not be excluded.

Plaintiffs assert that Dr. Longnecker lacks qualification as an expert and offers unreliable and irrelevant opinions. ECF No. 75. For these reasons, Plaintiffs ask the Court to exclude numerous opinions of Dr. Longnecker.[2] *Id.* The Court considers each of these allegations in turn.

### *A. Dr. Longnecker is properly qualified as an expert.*

Dr. Longnecker is a Medical Doctor and board-certified family practice physician licensed to practice in Texas, New Mexico, Colorado, and Wyoming. ECF No. 76 at 14. Dr. Longnecker has over thirteen years of experience in practice, including "multiple years of experience in a hospital, an ambulatory, and a correctional setting (both prison and jail)." *Id.* Dr. Longnecker currently serves as the Chief Medical Officer of a correctional healthcare company, aligning with his certification as a correctional healthcare professional. *Id.*

Plaintiffs argue that "Dr. Longnecker lacks qualifications as an expert to opine on Mr. Douglas's cause of death or factors that may or may not have contributed to his death." ECF No. 75 at 4. Plaintiffs take particular issue with the fact that Dr. Longnecker does not "have any experience performing autopsies or determining causes or manners of death." ECF No. 75 at 5.

The Court disagrees. That Dr. Longnecker may not have precise experience with autopsies or determining causes of death is immaterial, as an expert witness's qualifications to testify need not extend to every disputed fact in the instant case — an expert must only possess knowledge and experience sufficient to support the proffered opinions. *See Daubert*, 509 U.S. at 592 (noting that experts have testimonial latitude on the "assumption that the expert's opinion

---

[2] Plaintiffs seek to exclude a total of 37 statements made by Dr. Longnecker. Due to the numerosity of these statements, the Court refrains from including each statement at issue in the instant Order; all statements are located in Plaintiffs' Motion. ECF No. 75.

will have a reliable basis in the knowledge and experience of his discipline," and need not be based on firsthand knowledge or observation); *Kumho Tire Co.*, 526 U.S. at 147 ("Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'"); *Gillis v. Cmty. Prods., LLC*, No. 5:22-CV-080, 2024 WL 3548775, at *6–7 (W.D. Tex. July 9, 2024) (holding that a doctor board certified in "General Pediatrics, Epilepsy, and Neurology with a Special Qualification in Child Neurology" was qualified to opine on plaintiff's cause of death, despite not being a forensic pathologist).

Dr. Longnecker's extensive knowledge, skill, experience, training, and education in healthcare — specifically, as a correctional healthcare professional who has treated detainees likely suffering appendicitis or peritonitis — are directly relevant to the issues Plaintiffs address and would assist the trier of fact in understanding the instant case. *See* ECF No. 75 at 11 ("Treating patients with suspected cases of appendicitis and/or peritonitis was something Dr. Longnecker encountered and did frequently during his six years as a hospitalist."). To be sure, district courts should avoid "turn[ing] the expert-qualification process into a battle of labels where expertise is defined so narrowly that qualified experts are irrationally excluded from testifying." *Cude v. Aep Tex. Inc.*, No. 2:19-CV-388, 2021 WL 791101, at *6 (S.D. Tex. Mar. 2, 2021) (quoting *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 625 (5th Cir. 2018)). Dr. Longnecker is sufficiently qualified as an expert witness.

### B. Dr. Longnecker's opinions are sufficiently reliable and relevant to the instant case.

Plaintiffs contend that Dr. Longnecker's opinions are "unsupported by any principles or methods," fail to rely on "any correctional standards or any scientific or medical data or theory," and are "inflammatory." ECF No. 75 at 6, 11. Thus, according to Plaintiffs, numerous opinions proffered by Dr. Longnecker must be excluded.

9

The Court disagrees. Dr. Longnecker, in making his opinions regarding the current case, "reviewed materials exchanged in discovery including all of the records related to the medical treatment of Larry Douglas, Jr. in the Potter County Jail." ECF No. 81 at 15. Experts are permitted to rely on assumptions when reaching their opinions, when grounded in some factual basis in the record and an underlying rational; an expert is even permitted to base his opinion on facts or data personally observed *or that he "has been made aware of." Johnson v. Cox*, No. 3:21-CV-3105, 2023 WL 4686435, at *4–5 (N.D. Tex. July 21, 2023) (emphasis added). Dr. Longenecker's review of case materials, coupled with his training, experience, and education, rise above the level of a mere *ipse dixit* and provide a sufficiently reliable methodology. *See, e.g., Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (finding a doctor's expert opinion based on thirty years of experience and review of relevant records sufficient, "grounded in the methods of procedures of science," and not "mere unsupported speculation") (internal marks omitted); *Allstate Ins. Co. v. Plambeck*, No. 3-08-CV-388, 2012 WL 12885053, at *2 (N.D. Tex. June 26, 2012) (concluding that extensive experience as a chiropractor and review of medical records and patient statements were sufficiently reliable bases for expert witness testimony).

Dr. Longnecker's opinion statements are also sufficiently relevant; no methodology employed by Dr. Longnecker is so irrelevant, speculative, or inflammatory so as to warrant exclusion of his testimony. Dr. Longnecker's opinions concerning the reasoning for certain actions, what certain individuals did or did not do with respect to Mr. Douglas and his care, the typical presentation of patients with conditions similar to Mr. Douglas, and the relevant standard of care — among other things — are helpful in explaining the circumstances and issues of the case. *See, e.g., In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-MD-2244, 2014 WL 3557345, at *7–8 (N.D. Tex. July 18, 2014) ("The admission of [the

doctor's] alleged speculation and narrative testimony . . . is not properly the subject of this Court's gatekeeping function under *Daubert*" and should instead be taken up at trial); *Rodriguez v. S. Health Partners, Inc.*, No. 3:20-CV-045, 2023 WL 5284833, at *7 (N.D. Tex. Aug. 16, 2023) (finding that doctors' testimonies regarding standard of care were clearly relevant). Accordingly, Plaintiffs' Motion as to the opinions of Dr. Longnecker (ECF No. 75) is **DENIED**.

\* \* \*

To the extent Plaintiffs disagree with Mr. Poole's and Dr. Longnecker's opinions, they can contest their weight at trial. *Child.'s Med. Ctr. Dall. v. Columbia Hosp. Med. City Dall. Subsidiary, L.P.*, No. 3-04-CV-2436, 2006 WL 616000, at *4 (N.D. Tex. Mar. 10, 2006) ("[E]vidence should be excluded prior to trial only if it is clearly inadmissible for any purpose. The better practice is to defer evidentiary rulings until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context."); *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. A-11-CV-542, 2014 WL 1333209, at *3 (W.D. Tex. Apr. 1, 2014) ("The Court need not exclude an expert's testimony simply because another party disagrees with its conclusions."). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Patton*, 2022 WL 2898946, at *3 (quoting *Daubert*, 509 U.S. at 596).

CONCLUSION

For the above reasons, Plaintiffs' Motion regarding Mr. Poole's opinions (ECF No. 73) is **GRANTED in part** and **DENIED in part**. Plaintiffs' Motion regarding Dr. Longnecker's opinions (ECF No. 75) is **DENIED**. Accordingly, the following opinions by Mr. Poole should be excluded:

- "There is also no information or evidence that any policymaker for Potter County knew of any pattern of conduct, negligence or shortcoming or inadequacy in the training of the jail officers to not properly respond to inmate requests for medical care nor that Jail staff had shown any *deliberate indifference* towards inmates' medical needs including Douglas Jr."

- "There is no information or evidence in the record that I have analyzed to indicate Potter County knew that their policies posed a substantial risk to Douglas Jr.; much less chose to ignore the risk by being *deliberately indifferent* to Douglas Jr. medical needs."

- "There is no information or evidence that indicates any policymaker of Potter County acted with *deliberate indifference* regarding any training or supervision of the jail officers or medical officers."

- "There was nothing so obvious in the previous actions of employees to suggest that a policymaker of Potter County acted with *deliberate indifference*, had notice of an inadequate policy, and/or chose not to address it."

- "There is no information or evidence in the record I have analyzed indicating Potter County *violated the 14th Amendment or 8th Amendment* to the United States Constitution."

**SO ORDERED.**

March 13, 2025

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE